1  DARON L. TOOCH (State Bar No. 137269)
   E-Mail:   dtooch@health-law.com
2  KATHERINE M. DRU (State Bar No. 280231)
   E-Mail:   kdru@health-law.com
3  **HOOPER, LUNDY & BOOKMAN, P.C.**
   1875 Century Park East, Suite 1600
4  Los Angeles, California 90067-2517
   Telephone: (310) 551-8111
5  Facsimile: (310) 551-8181

6  Attorneys for POMONA VALLEY
   HOSPITAL MEDICAL CENTER

7

8              **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

| | |
|---|---|
| 11  POMONA VALLEY HOSPITAL MEDICAL CENTER, a California Corporation, | Case No. |
| 12 | **COMPLAINT FOR:** |
| 13              Plaintiff, | **(1) Breach of Contract** |
| 14       vs. | **(2) Breach of Implied Covenant of Good Faith and Fair Dealing** |
| 15  MGM RESORTS INTERNATIONAL, a Delaware Corporation, UNITED HEALTHCARE SERVICES, INC., a Minnesota Corporation, and DOES 1-10, inclusive, | **(3) Breach of Implied-in-Law Contract** |
| 16 | **(4) Breach of Implied-in-Fact Contract** |
| 17 | **(5)Breach of Contract By Assignment** |
| 18              Defendants. | **(6) Estoppel** |
| 19 | **(7) Services Rendered** |
| 20 | **(8) Unfair Business Practices** |
| 21 | **(9) Interference with Contract** |
| 22 | **(10) Intentional Interference with Prospective Economic Advantage** |
| 23 | **(11) Negligent Interference with Prospective Economic Advantage** |
| 24 | |
| 25 | **JURY TRIAL DEMANDED** |
| 26 | Trial Date:       None Set |
| 27 | |
| 28 | |

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

Plaintiff Pomona Valley Hospital Medical Center (the "Hospital" or "Plaintiff") alleges as follows:

## INTRODUCTION

1.      This lawsuit arises out of the Defendants' failure to pay plaintiff Hospital the amount owed under a written contract between the parties for lifesaving care provided to a premature born baby.  Defendants have unilaterally taken additional discounts from what is owed under the contract.  The result is that the Hospital has been substantially underpaid, in an amount believed to be in excess of $1,735,576, plus statutory interest.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The parties are citizens of different states, and the amount in controversy exceeds $75,000.

3.      This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, and because one or more of the Defendants conducts a substantial amount of business in this Judicial District.

## THE PARTIES

4.      Plaintiff Pomona Valley Hospital Medical Center is a non-profit, public benefit corporation that is located and does business in Pomona, California.  It operates a teaching hospital licensed by the California Department of Health Services to provide general acute inpatient and outpatient services.

5.      Plaintiff is informed and believes that Defendant MGM Resorts International ("MGM") is a Delaware corporation with its principal place of business in Las Vegas, Nevada.

6.      Plaintiff is informed and believes that Defendant United HealthCare Services, Inc. ("United") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota.  United is licensed by the Department of

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

Insurance ("DOI")  to operate a health plan in the state of California.

7.    The Court should ignore and disregard any attempts by United to contend that it is not financially responsible for the underpayment at issue, should United attempt to avoid liability by contending in response to this Complaint that it is not financially responsible for decisions on bills or appeals.  Even if United arguably serves as an administrator for MGM, it determined the amount due to the Hospital, it issued payment to the Hospital for the amount United (erroneously) determined was due, and had a contractual duty to Hospital to make such determination and payments accurately.  Thus, MGM, and the Hospital, relied entirely on United to make an accurate determination of the amount due, and to pay the Hospital accurately. United  issues identification cards to its enrollees, which identify them as United enrollees, and United pays the Hospital whether or not United is the entity ultimately responsible for the bills.

8.    The true names and capacities of the defendants sued herein as Does 1 through 10, inclusive (the "Doe Defendants"), are unknown to Plaintiff at this time, and Plaintiff therefore sues such defendants by such fictitious names.  Plaintiff is informed and believe that the Doe Defendants are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, were the agents, representatives, or employees of the other defendants, and may be financially responsible to Plaintiff for the services it provided, as alleged herein.  The Complaint will be amended to allege the Doe Defendants' true names and capacities when they have been ascertained.

9.    MGM, United, and the Doe Defendants are collectively referred to herein as "Defendants."

10.    Plaintiff is informed and believes that at all relevant times each of the Defendants was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged was acting within the course and scope of such

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

agency and employment.

## ASSIGNMENT AND STANDING

11.     As a condition of the provision of services by the Hospital to any patient, each patient signs a Conditions of Admission ("COA") assigning his or her health insurance benefits to the Hospital.  The COA provides for the Hospital to be paid directly for the services provided to the patient.

12.     The Hospital received an assignment of benefits pursuant to a signed COA for the medical care at issue in this litigation.  The assignment of benefits reads as follows:

> I assign and authorize direct payment to the hospital of all insurance benefits payable for this hospitalization or for these outpatient services. I agree that the insurance company's payment to the hospital pursuant to this authorization shall discharge the insurance company's obligation to the extent of such payment. I understand that I am financially responsible for charges not paid according to this assignment.

13.     Defendants acknowledged and consented to the assignment of benefits, and/or waived any objections to or limitations on the assignment of benefits and the member's right to assign the benefits, by, *inter alia,* receiving and processing the Hospital's claim for the healthcare services at issue, and making and administering payments directly to the Hospital on the patient's claim.

14.     The Hospital has standing to pursue the claims for relief in this Complaint as an assignee of the member's benefits under the plans, as a party who has suffered injury in fact and lost money and/or property as a result of the Defendants' conduct, and as a party who rendered services to the patient with the knowledge of and at the request of the Defendants and was not appropriately compensated for the fair market value of those services.

## GENERAL ALLEGATIONS

## CHARGES AND CONTRACTUAL DISCOUNTS

15.     It is customary in the health care industry for hospitals to have a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245165.2

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  standard set of charges that they bill for health care services, supplies and equipment

2  provided to patients, absent a contract or law authorizing or requiring an alternative

3  rate.  By law, California hospitals are required to publish a list of the charges

4  (known as a "Chargemaster" or Charge Description Master ("CDM") once a year to

5  the California Office of Statewide Health Planning Department ("OSHPD"), which

6  makes these filings publicly available on its website.

7      16.    Hospitals frequently enter into written contracts with payors to accept

8  reimbursement that is discounted from their billed charges in exchange for the

9  benefits of being an "in-network" or "contracted" provider (*i.e.*, a provider with a

10  written contract with the health plan).  The benefits to a hospital of being a

11  contracted provider can include, but are not limited to, (i) the payor agreeing to

12  actively encourage members to use the hospital for elective services, supplies and

13  equipment, (ii) certainty as to the amount that will be paid so as to avoid disputes,

14  and (iii) a guarantee that the payor will timely review and reimburse the hospital for

15  the medical services, supplies and equipment provided to the plan's member in

16  accordance with the terms of the written contract.

17      17.    Conversely, health plans like to enter into contracts with hospitals to

18  get the benefits to a health plan of having a contracted provider.  These benefits can

19  include, without limitation, (i) the plan's ability to pay less than the hospital's

20  standard billed charges for services provided to members; and (ii) the plan's ability

21  to advertise and market to potential sources of business, such as existing and

22  prospective members, employers, and brokers.  The Hospital is informed and

23  believes that Defendants tout to such sources that the Hospital participates in

24  United's health plan networks.  The Hospital is informed and believes that United

25  profits from this advertising and marketing by obtaining premiums and fees

26  generated from these business sources.  The Hospital is informed and believes that

27  all of the Defendants benefit from the contract at issue by paying the Hospital less

28  than what the Defendants otherwise would owe to the Hospital without the existence

of the contract.

## THE PARTIES' WRITTEN AGREEMENT

18.     The Hospital entered into an agreement known as the Hospital Service Agreement ("Agreement") with PacifiCare of California ("PacifiCare") on or about May 16, 2005 to provided "Covered Services" to PacifiCare's members ("Members").

19.     "Covered Services" were defined to include "Medically Necessary health care services, supplies and benefits which are required by a member as determined by PacifiCare" (Agreement § 1.9), and the term "Member" was defined as "an individual who is enrolled in a Managed Care Plan and meets all the eligibility requirements for membership in the Managed Care Plan and for whom the applicable Premium has been received by PacifiCare."  (Agreement § 1.21.) "Managed Care Plan," in turn, was defined as "any one of the various health plans or products sponsored or administered by PacifiCare or its Affiliates, including, without limitation, a commercial prepaid health plan ('PacifiCare Commercial Health Plan') . . . ."  (Agreement § 1.16.)

20.     Exhibit 2 to the Agreement set forth rates to be paid by PacifiCare to Pomona for services rendered pursuant to the Agreement.  These rates were separated into rates applicable to HMO plans and rates applicable to PPO plans, and included per diem rates, case rates, a stop loss arrangement, and rates based on a percentage of Hospital's billed charges.

21.     Pursuant to section 5.1 of the Agreement, PacifiCare agreed to pay the Hospital for services rendered to PacifiCare Members at the rates set forth in Exhibit 2 to the Agreement, and the Hospital agreed (§ 2.1) to provide Covered Services to Members.

22.     Section 7.11 of the Agreement contains a confidentiality clause in which the parties agreed not to disclose the Agreement or any of its terms without the approval of the other party.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245165.2

23.     An "Addendum to the Hospital Services Agreement," (the "Addendum") was entered into on or about March 2, 2005 "to add product attachments for the PacifiCare Commercial PPO and ASO products.  The Addendum added an Exhibit 5 to the Agreement, titled "PacifiCare Commercial Preferred Provider Organization (PPO) Plan."

24.     Pursuant to Exhibit 5, the parties defined the term "Payor" to mean,

> an insurance company, self-insured employer group or multi-employer trust or other managed care organization, including but not limited to PacifiCare Life and Health Insurance Company, PacifiCare Life Assurance Company and other PacifiCare Affiliates, that (a) underwrites or administers health benefit plans or self-funded health benefit plans, and (b) is contractually obligated to indemnify or make payment on behalf of Eligible Persons with respect to Covered Services under a Benefit Pan, and (c) has contracted with PacifiCare or a PacifiCare Affiliate in the manner contemplated by this Agreement . . . . References to PacifiCare in the Agreement shall mean and refer to the applicable Payor in the context of the ASO Product or PPO Plan.

(Agreement Ex. 5, § 1.4)

25.     Section 2.3 of Exhibit 5 authorized PacifiCare to:

> (a) enter into agreements with one or more Payors which obligate Hospital to provided Covered Services in accordance with the terms of this Agreement

> (b) receive claims from Hospital, adjust such claims pursuant to the rates set forth in this Agreement and submit adjusted claims information to Payor; and

> (c) receive from Payors payments for furnishing Covered Services to Eligible Persons and administer such payments by endorsing, by facsimile or otherwise, and remit payments to Hospital.

26.     Sections 4.1 and 4.2 of Exhibit 5 made clear that the compensation terms set forth in the Agreement applied to claims for services provided to Members of PPO Plans, and Section 5.2 of Exhibit 5, stated that the Agreement,

> in addition to being an agreement between PacifiCare and Hospital, constitutes an agreement between Hospital and various payors that have authorized, or will authorize,  PacifiCare to enter into this Agreement on behalf of Payor. Upon the execution of any agreement between PacifiCare and Payor, Payor shall thereby be bound by the terms and conditions contained herein this Agreement.

(Agreement Ex. 5, § 5.2.)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1245165.2

27.     Plaintiff is informed and believes that United acquired PacifiCare in or around late 2005, and that the Agreement was assigned by PacifiCare to United at or around that time.

28.     On June 1, 2009, the parties entered into Amendment Three to the Agreement, which, among other changes, defined the term "Payer" to mean,

PacifiCare, PacifiCare's affiliates;

United;

United's Affiliates; and

Any entity received administrative services from United or one of United's Affiliates . . . .

(Amendment 3 at § 1.)

29.     On January 1, 2015, the parties entered into Amendment Nine to the Agreement, which set forth rates payable to the Hospital for services provided to Defendants' Members on or after that date.  Amendment Nine included rates for "All Other Commercial Non HMO Claims."  (Amendment Nine, p. 21-38.)

30.     Section 2.2 of Amendment Nine set forth rates for Inpatient Covered Services.  The rates for care provided to newborns were $1,052 per diem for normal newborns and $5,162 per diem for newborns requiring intensive (i.e., NICU), intermediate, or continuing care.

31.     Also included in the rates contained in Amendment Nine to the Agreement was an "Inpatient Outlier" rate.  This rate was set forth as follows:

When Eligible Charges for Covered Services rendered during a single Admission . . . exceed **$326,924** ("Inpatient Outlier Threshold"), the contract rate will be a Percentage Payment of **68.89%** of the Eligible Charges, not to exceed a contract rate of **$16,458** Per Diem, instead of the applicable contract rate set forth in section 2.2. . . .

(Amendment 9 at § 2.2.1.)

32.     On February 26, 2016, the parties entered into a Memorandum of Understanding ("MOU") that set forth new rates for services provided by the Hospital under the Agreement beginning on February 1, 2016.  Pursuant to the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245165.2

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

MOU, the rates for care provided to newborns were $1,110 per diem for normal newborns and $5,445 per diem for newborns requiring intensive (i.e., NICU), intermediate, or continuing care.  (MOU at p. 6.)

33.    The MOU also included an "Outlier" rate for inpatient care of 66.6% of the "Entire Claim."  (MOU at p. 6.)

34.    Plaintiff is informed and believes that an Administrative Services Agreement ("ASA") exists between United and MGM, whereby MGM agreed to abide by and be bound by the terms of United's contracts with providers who furnish healthcare services to MGM's Members.

### THE PATIENT'S CLAIM

35.    The claim at issue in this case is for care provided by the Hospital to a very sick, premature, newborn baby (the "Patient").  The Patient was a Member of Defendants, and Defendants thus were financially responsible for the healthcare services provided to the Patient.

36.    The Patient was born premature on February 21, 2016 at Desert Valley Hospital, at 24 weeks gestation, i.e., a "micro-preemie."  The Patient was intubated and given medication to treat Respiratory Distress Syndrome.  The Patient then was transferred to St. Mary's Medical Center, where a head ultrasound revealed an intraventricular hemorrhage, i.e., bleeding into the fluid-filled areas of the brain, and an echocardiogram showed a patent ductus arteriosus, which could lead to congestive heart failure if not corrected.  The Patient also exhibited symptoms of spontaneous intestinal perforation, which can lead to blindness and even death if not corrected, typically with surgery.

37.    The Patient's conditions required treatment in a neonatal intensive care unit ("NICU") at a higher level of care than St. Mary's Medical Center could provide.  Accordingly, on March 2, 2016, the Patient was transferred via ambulance to the Hospital's NICU. The Patient's mother executed the Hospital's COA on behalf of the Patient that same day.

38.     The Patient received treatment at the Hospital through July 12, 2016, or for over four months.  This treatment included multiple surgeries, including a laparotomy, a small bowel resection, creation and closure of stoma, a thoracotomy with ligation of patent ductus arteriosus, and hernia repair.  The Patient also received oxygen and continuous positive airway pressure through a "breathing machine" throughout his treatment at the Hospital, and further required intense IV antibiotic therapy.

39.     Throughout the Patient's treatment at the Hospital, Defendants were provided daily faxed updates of the Patient's clinical condition and status. On July 13, 2016, Sierra Health Care Operations, on behalf of Defendants, authorized the Patient's entire stay and treatment at the Hospital as medically necessary.

**DEFENDANTS' FAILURE TO PAY AS REQUIRED BY THE AGREEMENT**

40.     The Hospital submitted a bill to United for the care provided to the Patient on July 20, 2016, and submitted a corrected bill on July 22, 2016.  The total bill for the services provided to the Patient during the over-four-month period that he received medical care at the Hospital was $3,225,286.05.

41.     Pursuant to the Inpatient Outlier rate in the MOU, the Hospital expected payment of $2,148,040.51 for the Patient's claim.

42.     However, on April 5, 2017, United issued a Remittance Advice ("RA") and payment on the claim of only $441,672, in violation of the Agreement.

43.     The RA showed that United recognized the Hospital's full billed charges as "Covered," but denied the balance of the Hospital's charges with codes for "Non Covered Charges" and "The benefit for this service is included in the payment/allowance for another service/procure that has already been adjudicated." United did not provide any explanation for its failure to pay according to the terms of the Agreement.

**MGM ACCESSED THE AGREEMENT**

44.     The Hospital appealed Defendants' underpayment to UMR, who

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  Plaintiff is informed and believes is the third-party administrator of the Patient's

2  health benefit plan for MGM, on April 7, 2017.

3      45.    On May 9, 2017, MGM acknowledged receipt of the appeal and

4  requested further information.  On June 28, 2017, MGM responded with an "offer to

5  compromise" based on the rates set forth in the Agreement, and stated,

> MGM is proposing to allow the UHC per diem rate of $5,445.00 (to
> include all pharmacy and ancillary charges).  MGM would allow this
> rate for dates 3/2/16 through 6/11/16, or 102 days.  June 16, 2016 is the
> date per medical records that the patient was removed from the CPAP
> and could have been transferred to a participating facility in the Las
> Vegas area.  This would result in additional payment of $113,718.00
> (102*5445 = $555,390, less $441,672 paid to date).

10      46.    The Hospital appealed the Patient's claim again on September 8, 2017.

11  In that letter, the Hospital rejected MGM's "offer to compromise," explaining that,

12  pursuant to the Agreement, MGM was required to pay at the "Stop Loss" (i.e.,

13  Inpatient Outlier) rate, not a per diem rate.  The Hospital further explained it had

14  obtained authorization from Defendants' agent, Sierra Health Care Operations, for

15  the entire length of stay as medically necessary.  Therefore, payment at the full,

16  contracted Inpatient Outlier rate set forth in the MOU was due.

17      47.    Despite the Hospital's appeals, the Patient's claim remains underpaid

18  by $1,735,576.05, plus statutory interest.

19              **FIRST CAUSE OF ACTION**

20         **(Breach of Contract Against All Defendants)**

21      48.    Plaintiff incorporates here by reference all of the foregoing allegations

22  of this Complaint, as though set forth here in full.

23      49.    The Agreement, Amendments, and MOU require United to correctly

24  and accurately calculate the amount due to Hospital, and to direct Payors, including

25  MGM, to pay the correct amount to Hospital.

26      50.    Plaintiff has performed all of the terms of the Agreement,

27  Amendments, and MOU, except to the extent waived or prevented by Defendants.

28      51.    MGM accessed and benefited from the Agreement in paying the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245165.2

1    Hospital for the healthcare services provided to the Patient.

2    52.    Defendants have breached the terms of the Agreement, Amendments,

3    and MOU by failing to pay the Hospital in accordance with the terms of the

4    Agreement, Amendments, and MOU.  Payors, including MGM, rely on the expertise

5    and administrative apparatus of United to determine the correct amount to be paid

6    for services and to pay it to Hospital.  Plaintiff relies on Defendants to fairly and

7    accurately calculate payments and make payments consistent with the terms of the

8    Agreement, Amendments, and MOU.

9    53.    Plaintiff has suffered damages as a result of United's failure and refusal

10   to direct MGM to pay in accordance with the terms of the Agreement, Amendments,

11   and MOU and as a result of MGM's failure to pay the Hospital in accordance with

12   the terms of the Agreement, Amendments, and MOU, in an amount that will be

13   proven at trial.

14   54.    Defendants further are obligated to pay Plaintiff statutory interest at the

15   rate of 10% per annum on the amount of Defendants' underpayment to the Hospital,

16   in accordance with Insurance Code § 10123.13, in an amount to be proven at trial.

17                          **SECOND CAUSE OF ACTION**

18   **(Breach of Implied Covenant of Good Faith and Fair Dealing Against All**

19                                  **Defendants)**

20   55.    Plaintiff incorporates here by reference all of the allegations in this

21   Complaint set forth above as though set forth here in full.

22   56.    California law incorporates into each contract, including the

23   Agreement, Amendments, and MOU, an implied covenant of good faith and fair

24   dealing.

25   57.    Plaintiff has fully complied with the terms of the Agreement,

26   Amendments, and MOU, and has provided millions of dollars of health care services

27   to Defendants' Member.

28   58.    Defendants have purported to interpret the Agreement, Amendments,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245165.2

1   and MOU in bad faith, and without a reasonable basis for the positions asserted, and

2   have processed and paid the Hospital in an amount less than the amount required

3   under the terms of the Agreement, Amendments, and MOU.  Defendants have acted

4   in a fashion so as to assure that Plaintiff will not be paid in accordance with the

5   terms of the Agreement, Amendments, and MOU and will not receive the benefits it

6   is entitled to receive under the Agreement, Amendments, and MOU, and have

7   thereby breached the implied covenant of good faith and fair dealing.

8       59.    Plaintiff has suffered damages as a result of the actions of Defendants,

9   in an amount to be proven at trial.

10      60.    Defendants further are obligated to pay Plaintiff statutory interest at the

11  rate of 10% per annum on the amount of Defendants' underpayment to the Hospital,

12  in accordance with Insurance Code § 10123.13, in an amount to be proven at trial.

13                          **THIRD CAUSE OF ACTION**

14                  **(Breach of Implied-in-Law Contract Against MGM)**

15      61.    Plaintiff incorporates here by reference all of the allegations in this

16  Complaint set forth above as though set forth here in full.

17      62.    The Hospital alleges this cause of action on the alternative in the event

18  that a contract is not found to exist between the Hospital and MGM.

19      63.    The Hospital provided medically necessary NICU services to the

20  Patient, a Member of a health plan issued by MGM.  The Hospital provided such

21  services with the intent to charge a reasonable and customary rate for its services,

22  and with the reasonable expectation of payment from MGM at a customary and

23  reasonable rate.

24      64.    Prior to rendering the services at issue, the Hospital obtained a

25  verification of the Patient's eligibility as a member of MGM.  The Hospital

26  requested and obtained authorization to admit the Patient and provide NICU

27  services throughout the Patient's treatment at the Hospital.  The Hospital reasonably

28  relied on this authorization when rendering NICU services to the Patient.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

65.     Under California common and statutory law, an implied-in-law contract was created whereby MGM was legally required to pay the reasonable and customary value for services rendered to its Member.

66.     MGM further was required to pay for health care services that it authorized.  Specifically, Insurance Code § 796.04 provides, in pertinent part:

> A health care service plan [or insurer] that authorizes a specific type of treatment [for services covered under a policyholder's contract or plan] by a provider shall not rescind or modify this authorization after the provider renders the health care service in good faith and pursuant to the authorization.

67.     Further, MGM received, accepted, used, enjoyed and benefitted from the Hospital's provision of NICU care to the Patient.  MGM has retained the benefit from the Hospital's services, both directly and through benefits received by and retained by the Patient for whom MGM is financially responsible.  The Hospital is also informed and believes that MGM has received and retained premiums paid under the Patient's health benefits plan.  This created a common law, implied-in-law obligation for MGM to reimburse the Hospital the reasonable and customary value for the services rendered.

68.     The Hospital has performed all obligations required of it under its implied-in-law contract with MGM.

69.     MGM breached that contract by failing and refusing to properly pay for the services rendered at issue.  MGM has paid far less either the reasonable and customary value or the Hospital's billed charges for the services at issue.

70.     Accordingly, The Hospital has been damaged by this breach, and there is now due, owing and unpaid from MGM an amount to be proven at trial.

71.     MGM further is obligated to pay Plaintiff statutory interest at the rate of 10% per annum on the amount of MGM's underpayment to the Hospital, in accordance with Insurance Code § 10123.13, in an amount to be proven at trial.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245165.2

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

## FOURTH CAUSE OF ACTION

### (Breach of Implied-in-Fact Contract Against MGM)

72.     Plaintiff incorporates here by reference all of the allegations in this Complaint set forth above as though set forth here in full.

73.     The Hospital alleges this cause of action on the alternative in the event that a contract is not found to exist between the Hospital and MGM.

74.     The Hospital provided medically necessary NICU services to the Patient, a Member of a health plan issued by MGM.  The Hospital provided such services with the intent to charge a reasonable and customary rate for its services, and with the reasonable expectation of payment from MGM at a customary and reasonable rate.

75.     Prior to rendering the services at issue, the Hospital obtained a verification of the Patient's eligibility as a member of MGM.  The Hospital requested and obtained authorization to admit the Patient and provide NICU services throughout the Patient's treatment at the Hospital.  The Hospital reasonably relied on this authorization when rendering NICU services to the Patient.

76.     When MGM authorized the services at issue, MGM knew, or should have known that the Hospital intended to charge the reasonable and customary rate for its services, and with reasonable expectation of payment from MGM at its reasonable and customary charges.

77.     An implied-in-fact contract exists whereby MGM knew, or should have known that it would be obligated to reimburse the Hospital its reasonable and customary charges for services rendered to the Patient, and agreed to pay the Hospital for those services.

78.     The Hospital has performed all of the obligations required of it under its implied-in-fact contract with MGM.

79.     MGM breached that contract by failing and refusing to properly pay for the services provided.  MGM has paid far less either the reasonable and customary

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  value or the Hospital's billed charges for the services at issue.

2      80.    Accordingly, The Hospital has been damaged by this breach, and there

3  is now due, owing and unpaid from MGM an amount to be proven at trial.

4      81.    MGM further is obligated to pay Plaintiff statutory interest at the rate

5  of 10% per annum on the amount of MGM's underpayment to the Hospital, in

6  accordance with Insurance Code § 10123.13, in an amount to be proven at trial.

7                          **FIFTH CAUSE OF ACTION**

8              **(Breach of Contract by Assignment Against MGM)**

9      82.    The Hospital incorporates by reference the allegations set forth above

10 as though fully set forth herein.

11     83.    The Hospital alleges this cause of action on the alternative in the event

12 that a contract is not found to exist between the Hospital and MGM.

13     84.    The Hospital is informed and believes that the Patient has a written

14 policy with Defendants, setting forth the terms of the Patient's health care coverage.

15     85.    The Hospital is informed and believes that MGM arranges for, and

16 takes the financial risk for health care services rendered to the Patient, and that

17 MGM accepts the financial risk to pay providers for the health care services that the

18 Patient needs, in exchange for periodic premium payments.

19     86.    The Hospital's COA constitutes a contract that it enters into with all

20 individuals who receive care at the Hospital, including Patient.

21     87.    In the COA, the Patient assigned his insurance benefits to the Hospital.

22 As a result, the Hospital became an assignee of the rights the Patient has in his

23 benefits policy with Defendants.

24     88.    The Hospital is informed and believes that the benefit policy between

25 Defendants and the Patient requires MGM to pay for NICU services at a customary

26 and reasonable rate.  As an assignee of the rights of the Patient in his plan policy,

27 the Hospital is entitled to have the NICU services provided to the Patient at a

28 customary and reasonable rate.

89.     MGM has breached this benefits policy by failing to pay the Hospital for these services at a customary and reasonable rate.

90.     The Hospital has performed all obligations required of it to be performed under the benefit policy.

91.     MGM breached that contract by failing and refusing to properly pay for the services provided.  MGM has paid far less either the reasonable and customary value or the Hospital's billed charges for the services at issue.

92.     Accordingly, The Hospital has been damaged by this breach, and there is now due, owing and unpaid from MGM an amount to be proven at trial.

93.     MGM further is obligated to pay Plaintiff statutory interest at the rate of 10% per annum on the amount of MGM's underpayment to the Hospital, in accordance with Insurance Code § 10123.13, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Estoppel Against MGM)

94.     The Hospital incorporates by reference the allegations set forth above as though fully set forth herein.

95.     The Hospital alleges this cause of action on the alternative in the event that a contract is not found to exist between the Hospital and MGM.

96.     All of the bills at issue in this action are for services rendered to the Patient, a MGM Member for which MGM is financially obligated.  For these bills, prior to rendering the services at issue, the Hospital obtained from a verification of the Patient's eligibility as a Member of MGM, and requested and obtained authorization to admit the Patients to receive NICU care.

97.     The Hospital reasonably and actually relied on MGM's conduct and representations that coverage was verified and services were authorized, by rendering NICU care to the Patient, with the expectation that MGM would pay the Hospital the reasonable value of those non-contracted services.

98.     As is common practice in the trade of the healthcare industry, MGM

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  intended that the Hospital rely on MGM's representations that the services were

2  authorized.

3      99.    Accordingly, MGM should be (i) estopped from contending that the

4  services it authorized are not payable due to lack of authorization, and (ii) estopped

5  from paying less than the reasonable and customary value for these services.

6      100.   As a direct and proximate result of MGM's knowing and intentional

7  acceptance and retention of the wrongfully obtained benefit, MGM has been

8  unjustly enriched in an amount to be proven at trial.

9              **SEVENTH CAUSE OF ACTION**

10           **(Services Rendered Against MGM)**

11     101.   The Hospital incorporates by reference the allegations set forth above

12  as though fully set forth herein.

13     102.   The Hospital alleges this cause of action on the alternative in the event

14  that a contract is not found to exist between the Hospital and MGM.

15     103.   To the extent not covered by the cause of action above, a common

16  count has arisen between the Hospital and MGM for MGM to pay the Hospital for

17  the services rendered by the Hospital to the Patient.  The Hospital provided MGM

18  with the details of the Patient's claim by the submitted bills in the ordinary course of

19  business, through normal industry standard billing practices.

20     104.   MGM requested, by words or conduct, that the Hospital perform

21  services for the benefit of MGM.

22     105.   The Hospital performed the services as requested.

23     106.   MGM has not paid the Hospital for the services at the reasonable value

24  of those services.

25     107.   The reasonable value of the services that were provided were the

26  Hospital's billed charges or some amount higher than the amount MGM paid

27  according to proof at trial.

28     108.   Accordingly, the Hospital has been damaged by MGM's failure to pay

1 the reasonable and customary value of the Hospital's services, and there is now due,

2 owing and unpaid from MGM an amount to be proven at trial.

3      109. MGM further is obligated to pay Plaintiff statutory interest at the rate

4 of 10% per annum on the amount of MGM's underpayment to the Hospital, in

5 accordance with Insurance Code § 10123.13, in an amount to be proven at trial.

6 **<u>EIGHTH CAUSE OF ACTION</u>**

7 **(Unfair Business Practices Against MGM)**

8      110. The Hospital incorporates by reference the allegations set forth above

9 as though fully set forth herein.

10      111. The Hospital alleges this cause of action on the alternative in the event

11 that a contract is not found to exist between the Hospital and MGM.

12      112. MGM has engaged in unfair, unlawful and fraudulent business acts and

13 practices by, inter alia:

14      (a) Paying the Hospital at a rate far below the reasonable and

15 customary value for services provided.

16      (b) Failing to properly and adequately compensate the Hospital for

17 non-contracted services by failing to properly apply the criteria set forth in

18 California case law.

19      (c) Failing to timely pay the Hospital's bills for care provided to the

20 Patient;

21      (d) Failing to automatically pay interest at 10% per annum to the

22 Hospital for untimely paid bills, in accordance with Insurance Code §

23 10123.13.

24      113. This conduct by Defendants constitutes illegal, unfair and fraudulent

25 business practices under California Business and Professions Code Section 17200,

26 *et seq.*

27      114. The Hospital has suffered injury in fact as the result of this misconduct

28 by MGM, including, without limitation, in the form of underpaid bills.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

115.   The Hospital seeks restitution of an amount to be proved at trial, in the amounts that MGM kept which it was obligated to pay to The Hospital, plus applicable statutory interest at 10% per annum.

## NINTH CAUSE OF ACTION

### (Interference With Contract Against United)

116.   Plaintiff incorporates here by reference all of the preceding allegations of this pleading.

117.   The Hospital alleges this cause of action on the alternative in the event that United is not found to be the agent of MGM.

118.   United at all relevant times knew of the existence of the contractual relationship between the Hospital and MGM.  In particular, the Hospital is informed and believes that United demonstrated their knowledge of this contractual relationship by instructing MGM to pay specific amounts to the Hospital.

119.   United engaged in intentional acts designed to disrupt the Hospital's relationship with MGM.  Specifically, United intentionally misrepresented to MGM the amount owed for the Hospital's services, and thus intentionally and fraudulently caused MGM to breach their implied contracts with the Hospital by paying less than the contracted or reasonable and customary rates for those services.

120.   United knew that the interference was certain or substantially certain to occur as a result of its actions.

121.   United's conduct has actually disrupted The Hospital's relationship with MGM, including but not limited to inducing their breach of the implied contracts.

122.   United's conduct has in fact and proximately caused damages to The Hospital in amounts to be proven at trial.

123.   United' conduct was willful, oppressive and fraudulent.  The Hospital therefore is entitled to punitive damages.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245165.2

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

## TENTH CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage Against United)

124.    Plaintiff incorporates here by reference all of the preceding allegations of this pleading.

125.    The Hospital alleges this cause of action in the alternative in the event that United is not found to be the agent of MGM.

126.    As set forth above, the Hospital alleges that enforceable contracts exist between it and MGM.  However, to the extent that such alleged contracts do not exist or are not enforceable, a non-contractual economic relationship between the Hospital and MGM exists and contains a probability of future economic benefits to the Hospital.

127.    United at all relevant times knew and know of the existence of the economic relationship between the Hospital and MGM.  In particular, the Hospital is informed and believes that the United demonstrated its knowledge of this economic relationship by instructing MGM to pay a specific amount to the Hospital.

128.    United engaged in intentional acts designed to disrupt the Hospital's relationship with MGM.  Specifically, United intentionally misrepresented to MGM the amount owed for the Hospital's services and thus intentionally and fraudulently instructed MGM to pay the Hospital less than the contracted or reasonable and customary rates for those services.

129.    United's acts were wrongful in that they breached United's explicit and/or implied contracts with the Hospital and also were intentional and/or negligent misrepresentations.

130.    United knew that the interference was certain or substantially certain to occur as a result of their actions.

131.    United's conduct has actually disrupted the Hospital's relationship with MGM.

132.    United's conduct has in fact and proximately caused damages to the Hospital in amounts to be proved at trial.

133.    United's conduct was willful, oppressive and fraudulent.  The Hospital therefore is entitled to punitive damages.

## ELEVENTH CAUSE OF ACTION

**(Negligent Interference with Prospective Economic Advantage Against United)**

134.    Plaintiff incorporates here by reference all of the preceding allegations of this pleading.

135.    The Hospital alleges this cause of action on the alternative in the event that United is not found to be the agent of MGM.

136.    As set forth above, the Hospital alleges that enforceable contracts exist between it and MGM.  However, to the extent that such alleged contracts do not exist or are not enforceable, a non-contractual economic relationship between the Hospital and MGM exists and contains a probability of future economic benefits to The Hospital.

137.    United at all relevant times knew of the existence of the economic relationship between the Hospital and MGM.  In particular, The Hospital is informed and believes that United demonstrated its knowledge of this economic relationship by instructing MGM to a pay specific amount to The Hospital.

138.    United engaged in negligent acts that disrupted The Hospital's relationship with MGM.  United knew or should have known that the amount owed for the Hospital's services was in fact higher than the amount it reported to MGM. Thus, United misrepresented the rate for the Hospital's services, and negligently caused MGM to pay the Hospital less than the amount owed.

139.    United's acts were wrongful in that they breached United's explicit and/or implied contracts with the Hospital and also were intentional and/or negligent misrepresentations.

140.    United knew that the interference was certain or substantially certain to

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1245165.2

1    occur as a result of their actions.

2        141.   United's conduct has actually disrupted the Hospital's relationship with

3    MGM. United's conduct has in fact and proximately caused damages to the Hospital

4    in amounts to be proven at trial.  The risk of harm to the Hospital was foreseeable to

5    United.

6        WHEREFORE, Plaintiff prays for judgment against Defendants, and each of

7    them, as follows:

8        (a)    For compensatory damages in an amount to be proved at trial,

9    plus applicable statutory interest;

10        (b)    For restitution in an amount to be proved at trial, plus applicable

11    statutory interest;

12        (c)    For punitive damages;

13        (d)    For costs and attorneys' fees; and

14        (e)    For such other relief as the Court may deem just and proper.

15

16    Dated:  March 1, 2018                HOOPER, LUNDY & BOOKMAN, P.C.

17

18

19                                By:    _/s/Katherine M. Dru_____

20                                        KATHERINE M. DRU
                                 Attorneys for POMONA VALLEY
21                                HOSPITAL MEDICAL CENTER

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

COMPLAINT

1245165.2